JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Peter Kouris (father) appeals the child support obligation ordered by the domestic relations court. We find merit to the appeal in part and reverse and remand for recalculation of child support.
 {¶ 2} The parties were divorced on May 3, 2000. Two children were born of the marriage, a son in 1991 and a daughter in 1995. Pursuant to the divorce decree, the parties agreed to a shared parenting arrangement. Plaintiff-appellee Jean M. Kouris (mother), was designated the residential parent. The father was ordered to pay $684.40 per month in child support based upon his income of $45,000. This was a deviation from the child support worksheet, as the parties had agreed that, in exchange for the lower child support payment, the father would pay 61.61% of the day care expenses incurred for after-school care and care during summer vacation. In the event the father failed to make the day care payments within seven days of being presented the expenses, his child care obligation would automatically revert to the child support worksheet amount of $966.34. The parents were ordered to equally share the out-of-pocket medical expenses for the children.
 {¶ 3} On July 13, 2000, the mother filed a motion to show cause arguing that the father had failed to pay the required child care and medical expenses. On October 23, 2000, the father filed a motion to modify the child support obligation seeking to lower his obligation based on a change of circumstances, his unemployment.
 {¶ 4} On January 17, 2001, the parties entered into a settlement, agreeing that the father owed $350 for unpaid day care expenses and that the father would pay the amount by February 9, 2001. The father's motion to modify his support obligation, however, was set for a hearing.
 {¶ 5} A hearing before a magistrate was conducted over several days, February 21 and April 25-26, 2001.
 {¶ 6} Based on the evidence presented, the magistrate found a change in circumstances based on the father's lack of employment from October 23, 2000, the date on which he filed his motion for modification, to February 1, 2001, when his unemployment compensation ended and he found employment in a job outside of his field. The magistrate recommended that the father's support be decreased to $333.38 per month per child for that time period, but that thereafter the amount should revert to $472.70 per month per child, which is the amount indicated on the child support worksheet attached to the divorce decree.
 {¶ 7} The magistrate also found that the father had an overpayment of child support which the magistrate ordered be applied to the full payment of the father's arrearage for medical expenses and day care arrearage, which would leave the father a reimbursement of $376.37.
 {¶ 8} Both the father and mother objected to the magistrate's report. On March 15, 2002, the trial court overruled the objections and adopted the magistrate's report.
 {¶ 9} The father appeals and asserts four assignments of error.
 Imputing Father's Income {¶ 10} The father argues in his first assignment of error that the magistrate erred by imputing income to him when there was no evidence he was voluntarily unemployed or underemployed and without expert testimony regarding prevailing job opportunities and salary levels.
 {¶ 11} Former R.C. 3113.215(B)(5)(h), which was in existence at the time the trial court issued its decision, stated that "when the court * * * calculates gross income, [it], when appropriate, may average income over a reasonable period of years." The statute expressly permitted the court to average income over a reasonable period of years when determining the income of a party or parties. The only guideline the statute supplied was that this provision is to be used in "appropriate" cases. Luke v. Luke (Feb. 20, 1998), 11th Dist. No. 97-L-044. The court's decision to average the obligor's income is within the sound discretion of the court and will not be overturned absent a showing of an abuse of that discretion. Id.
 {¶ 12} In the instant case, the evidence indicated that the father was laid off from his job with Intercom Systems on May 31, 2000. He testified that from June 1, 2000 to December 31, 2000 he received a total of $8,555 from unemployment. Despite his unemployment, he did not file a motion to modify his support until October 23, 2000. The magistrate therefore modified his support from October 23, 2000 to February 1, 2001.
 {¶ 13} In computing the father's salary, the magistrate used the amount of income the father received during the preceding three years of employment. This was done without first finding that it was possible for the father, who was fifty-three years old at that time, to find employment at that income level during a time of economic decline. The trial court found that the imputation was reasonable because "the Defendant has a history of employability, where Defendant has engineering skills though not specifically trained in that field, where the Defendant has training as a mechanical engineer technician, where the Defendant presents no evidence of physical or mental disability and where [the son] has special health needs." (Magistrate's Report at page 3).
 {¶ 14} We find the magistrate's imputing the father with an average income from the preceding three years based solely on these factors was an abuse of discretion. Pursuant to the child support worksheet, as set forth in former R.C. 3113.215(E) and (F), the first criteria in determining child support is the gross annual income of the respective parents. Income is defined as:
"(a) For a parent who is employed to full capacity, the gross income of the parent:
(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent."
 {¶ 15} R.C. 3113.215(A)(1). Potential income includes:
"(a) The income that the court determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides[.]"
 {¶ 16} Therefore, pursuant to former R.C. 3113.215(A), the court must make a threshold determination that a parent is voluntarily "unemployed or underemployed," prior to exercising its discretion in imputing income to that parent. Rock v. Cabral (1993), 67 Ohio St.3d 108,111. The magistrate made no finding that the father was either voluntarily underemployed or unemployed. Also, although the magistrate set forth the first two requirements in imputing income: the father's work history and qualifications, he failed to make findings under the third prong, "the prevailing job opportunities and salary levels in the community in which the parent resides."
 {¶ 17} The father testified that he was unemployed from June 2000 to February 2001. He held various jobs since then but was having a hard time finding a job in his specialized field. He had a two-year degree in engineering but stated that in the current market he was competing with engineers with four-year degrees and that his age was also a disadvantage. He registered with four "head hunters" and sent out hundreds of resumes. In light of this uncontroverted testimony, we find the trial court's imputation of an annual income to the father based on his preceding three years of income to be arbitrary.
 {¶ 18} The father's first assignment of error is sustained.
 Mother's Income {¶ 19} In his second assignment of error, the father argues that the trial court erred in computing the mother's income.
 {¶ 20} The magistrate computed the mother's income by averaging her income from the year 2000, which she earned from Southwest Ankle and Foot Associates (Southwest) ($18,167) and MSP[1] ($20,448) and the mother's income from the 2000 divorce decree representing her 1999 income, which was $33,371, resulting in an average income of $35,993.
 {¶ 21} Although the father argues that the trial court should have averaged the mother's income from MSP to arrive at a monthly average and add that amount to the mother's income from Southwest, we find that averaging the mother's income from Southwest with the income she received from MSP was the best way to take into account the mother's decrease in income from MSP, because she dedicated more time to her job at Southwest.
 {¶ 22} However, although we agree with the magistrate's computation, the averaged income is not the amount the magistrate used to compute the child support for the time the father was unemployed. Instead, it appears the magistrate simply used the mother's income from the prior divorce decree to compute the amount. We find this amount does not properly account for the mother's changed employment situation during that time.
 {¶ 23} Therefore, we remand the matter for recalculation of the support using the proper income.
 {¶ 24} The father's second assignment of error is sustained.
 Child Care Expenses {¶ 25} In his third assignment of error, the father argues that the trial court incorrectly calculated the day care expenses and also erred by using a different amount in the child support worksheet.
 {¶ 26} The magistrate computed the annual day care expense to be $3,526. In doing so, the magistrate took into account that the cost for the son's care from September to June was $1.60 per hour for one hour, three days a week. In addition, the daughter, who was in half-day kindergarten, spent two hours per day, three days a week in day care. Further, the mother paid $145 per month for an extended kindergarten program for the daughter. Therefore, for ten months of the school year, the cost for child care amounted to $2,029. For the 2001 summer vacation, the parties agreed the children would be enrolled in the Berea summer program at a cost of $30 per day for both children, five days a week for ten weeks for a total amount of $1,500. The children spent the remaining summer weeks with one of the parents.
 {¶ 27} The father first argues that the children spent most of the summer of 2000 with him because he was unemployed and available, and, therefore, the summer calculation was incorrect for determining his support. We find that during the summer of 2000, the children were with the father most of the time. We also find that using figures for the summer of 2001 was inappropriate. Therefore, although we find no error in the school-year calculation, the trial court is directed to recalculate the cost of care because the children were in their father's care for the summer of 2000.[2]
 {¶ 28} The father also argues that the figure stated in the original divorce decree for child care, $5,381, should not be used to calculate his future child care obligation because that figure was based on child care for the daughter when she was a preschooler, and now that she is in school, she requires less care. We agree that this portion needs to be modified to reflect the daughter's current child care needs.
 {¶ 29} The father's third assignment of error is sustained.
 Shared Living Expenses {¶ 30} In his fourth assignment of error, the father argues that in calculating the child support, the trial court should have considered the financial help the mother received from her live-in fiancé.
 {¶ 31} Former R.C. 3113.215(B)(3), which was in existence at the time the magistrate issued the decision, provided that a court "may deviate from the amount of support that otherwise would result from the use of the schedule" where not deviating "would be unjust or inappropriate and would not be in the best interest of the child." According to former R.C. 3113.215(B)(3), in determining what is unjust, inappropriate, or not in the best interest of the child, the court "may
consider" any one of a number of factors, including "benefits that either parent receives from remarriage or sharing living expenses with another person." R.C. 3113.215(B)(3)(h) (emphasis added).
 {¶ 32} Under the former statute, however, prior to considering the benefits a parent receives from sharing living quarters with another person, the trial court must first make findings that the amount calculated pursuant to the child support schedule: (1) would be unjust or inappropriate, and (2) would not be in the best interest of the child. R.C. 3113.215(B)(1), (B)(2)(c); Inscoe v. Inscoe (1997),121 Ohio App.3d 396, 426.
 {¶ 33} The record does not reveal that deviation from the support worksheet amount was necessary.
 {¶ 34} Accordingly, the father's fourth assignment of error is overruled.
Judgment affirmed in part and reversed in part. Case remanded for further proceedings consistent with this opinion.
TIMOTHY E. McMONAGLE, J. and ANTHONY O. CALABRESE, JR., J. concur.
[1] The mother is self-employed with MSP. She had a business partner, who died in 2000. That same year, the mother obtained employment with Southwest in order to provide health care for her children.
[2] Although the magistrate found that the day care cost was $3,526, he inexplicably used a higher amount of $5,381 on the child support worksheet. However, since we are remanding for recalculation, the error is moot.